**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGORY STEPHENS, | |
| Petitioner, | CIVIL ACTION: 3:07-CV-0412 |
| | And |
| v. | 3:07-CV-0706 |
| WARDEN JAMES T. WYNDER, et. al. | (JUDGE CAPUTO) |
| Respondents. | |

**MEMORANDUM**

Presently before the Court are Magistrate Judge Blewitt's Report and Recommendation (Doc. 8) and Petitioner Gregory Stephen's Objections to the Magistrate Judge's Report and Recommendation. (Doc. 11.) The Magistrate Judge has recommended that the Court consolidate the Petitioner's two identical petitions for writ of habeas corpus, civil numbers 07-0412 and 07-0706, and that case number 07-0706 be closed. Magistrate Judge Blewitt also recommended that the consolidated Petition for Writ of Habeas Corpus be dismissed as untimely pursuant to 28 U.S.C. § 2244(d)(1)(A). Finally, Magistrate Judge Blewitt has recommended that Petitioner's Motion for Appointment of Counsel filed in Case No. 07-706 be dismissed as moot. For the reasons set forth below, the Court not adopt the Magistrate Judge's Report and Recommendation at this time, but allow Petitioner to submit his mental health history to the Magistrate Judge for review to determine if Petitioner's habeas corpus claim is timely.

## BACKGROUND

In its September 12, 1989 Memorandum affirming the Dauphin County Court of Common Plea's (CCP) Order denying Petitioner's PCHA Petition, the Pennsylvania Superior Court appropriately presented the facts as follows:

> On Monday, March 21, 1983, at approximately 8:19 p.m., unformed police officers of the Harrisburg Police Department responded to 1322 Susquehanna Street, Harrisburg, Dauphin County, Pennsylvania. Upon their arrival, the police observed the body of a white male lying face down on the living room floor. The individual was nude, but covered with a gray quilt.
> The victim was lying on top of a purple bedspread with two pillows on each side of his head. A large pool of blood had formed under the victim's face. Blue jeans, a shirt, and underclothing were found folded on a nearby sofa. Also found in the living room was an open jar of Vaseline, a pack of Marlboro cigarettes, a kerosene heater, several beer cans, and a flesh colored dildo. The telephone had also been disconnected.
> The police learned that certain items of personal property of the victim were missing. These items had been in the house the last time the victim had been seen alive. There were no apparent signs of a struggle.
> The victim was killed with the use of a blunt object. Six wounds to the victim's head caused severe lacerations, and the wound that was the cause of death separated the upper and lower portions of the left ear, and was continuos with a fracture at the base of the skull. Expert testimony established that the victim was lying face down on the floor, at the time the fatal blow was struck.
> Through investigation, police discovered that a black male known as "[M]idnight" had been the last person to be in the company of the victim. [Appellant is known as "Midnight".] On March 22, 1983, at approximately 3:00 p.m., Appellant was brought to police headquarters for questioning. He was advised of his constitutional rights and subsequently signed a written waiver. Appellant first told the police that he had been at the victim's house on March 20, 1983, but when he left everything was "OK". However, Appellant later confessed to removing the victim's personal property and killing him.
> Appellant had initially met the victim two weeks prior to the homicide. Appellant did not have any money and was without a job when he had first come into contact with the victim. He engaged the victim with the purpose of obtaining money and agreed to engage in a homosexual encounter to that end.
> On the night of the killing, Appellant had gone to the victim's house. At the time of this second encounter, Appellant was again without any

> money...Appellant told police that he wanted to get some clothes in order to impress his girlfriend in Baltimore. Although the police recovered the victim's personal property, Appellant sold the items and used the money from the sales to purchase clothing. Finally, Appellant admitted removing the victim's wallet, but denied going through it. Subsequently, appellant was charged with murder.
> 
> Following a trial by jury, appellant was found guilty of second degree murder. Post-trial motions were filed and denied, and appellant was sentenced to life imprisonment. On direct appeal, judgment of sentence was affirmed by this Court, and our Supreme Court denied appellant's petition for allowance of appeal. On March 15, 1988, appellant filed a *pro se* PCHA petition. On July 27, 1988, new counsel filed a supplemental PCHA petition which was denied by the trial court without [a] hearing.

(Doc. 7 Ex. 2 at 2, 3.)

Petitioner filed a collateral appeal, which was denied by the CCP on October 31, 1988. On September 21, 1989, the Pennsylvania Superior Court affirmed the CCP's denial of Petitioner's PCHA conviction. (Doc. 7 Ex. 2.) A Petition for Allowance of Appeal regarding the denial of his PCHA Petition filed with the Pennsylvania Supreme Court was denied on May 8, 1990. (Doc. 1 at 7.) For over fourteen years, Petitioner filed no more appeals regarding his second degree murder conviction and life sentence. On September 16, 2004, Petitioner filed a second collateral appeal by way of a PCRA Petition with the CCP. (Doc. 7 Ex. 4.) On October 3, 2004 the CCP appointed counsel with respect to the PCRA Petition, and his counsel subsequently filed a no merit letter with the court. (Doc. 1 at 7.)

On March 25, 2005 the Commonwealth responded to Petitioner's PCRA Petition and argued Petitioner was ineligible for relief because his Petition was untimely. (Doc. 7 Ex. 5.) Petitioner appealed this judgment and on October 6, 2005, the Pennsylvania Superior Court affirmed the dismissal of his PCRA Petition by the CCP. (Doc 1 at 7.) On May 1, 2006, the Pennsylvania Supreme Court denied a Petition for Allowance of Appeal.

(Doc. 1 at 8.) Petitioner filed the instant federal habeas petition with the Eastern District of Pennsylvania on January 23, 2007, and with the Middle District of Pennsylvania on March 5, 2007.

## STANDARD OF REVIEW

Where objections to the magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper.  *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994).  Uncontested portions of the report may be reviewed at a standard determined by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7.  At the very least, the Court should review uncontested portions for clear error or manifest injustice.  *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**DISCUSSION**

In the instant action,[1] Petitioner challenges his 1983 second-degree murder conviction in the Dauphin County Court of Common Pleas ("CCP") on the following grounds: (1) insufficient evidence to prove guilt beyond a reasonable doubt; and (2) ineffective assistance of counsel in that counsel failed to raise a claim of constitutional violations of a right to a fair and impartial jury.  Petitioner contends that the Commonwealth used improper jury practices by discriminating against African-American jurors in its exercise of peremptory jury challenges during *voir dire*.  As to the first count, Petitioner states that as he was only charged with murder generally, and not charged with any felony, therefore, the jury could not have returned a verdict of second-degree murder, *i.e.,* felony murder.  Therefore, Petitioner claims he is actually innocent of second-degree murder.  As to the second count, Petitioner claims that he was denied his Sixth Amendment right to a fair and impartial jury when the Commonwealth used its peremptory challenges to strike six (6) of only seven (7) potential African-American jurors on his jury panel solely based on their race, thus leaving only one African-American juror, including alternates.  Because his trial and appellate counsel failed to object at trial, and failed to raise this claim on appeal, Petitioner asserts the he had ineffective assistance of counsel.

---

[1] Petitioner's cases, civil action numbers 07-0412 and 07-0706, are identical habeas petitions challenging a 1983 second degree murder conviction and life sentence.  The only difference between the two cases is that the court typed as is "EASTERN" in 07-0706, and in 07-0412 the court's name was handwritten and identified as "MIDDLE."  Accordingly, the Clerk of the Court will be directed to consolidate the two cases, and to close the file in case 07-706.  *See* FED. R. CIV. P. 42(a).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") which modified the procedures for habeas corpus proceedings in federal court. AEDPA, Pub. L. No. 104-132, 110 Stat. 1214. The habeas corpus amendments impose one-year statute of limitations for Section 2254 habeas petitions. 28 U.S.C. § 2244(d)(1). The one-year statute of limitations begins to run according to one of the four potential starting points. The relevant starting point in this case, 28 U.S.C. § 2244(d) provides in part: "(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. §2244(d)(1)(A); *see also Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998); *Merritt v. Blaine*, 326 F.3d 157 (3d Cir. 2003).

Review of the habeas petition reveals that on July 19, 1985, the Pennsylvania Superior Court affirmed the Petitioner's conviction. (Doc. 1 at 5, 6.) A Petition for Allowance of Appeal to the Pennsylvania Supreme Court was denied on May 20, 1986. (*Id.*) Petitioner did not file a Petition for Writ of *Certiorari* with the United States Supreme Court. (*Id.* at 6.) Petitioner filed a collateral appeal with the Dauphin County Court of Common Pleas ("CCP") through a Post Conviction Hearing Act ("PCHA") Petition, which was denied on October 31, 1988. (Doc. 1 at 7.) The Pennsylvania Supreme Court affirmed the CCP's denial of Petitioner's PCHA Petition. (Doc. 1 at 7.) The record reveals that for over fourteen (14) years Petitioner filed no more appeals regarding the second-degree murder conviction and life sentence until September 16, 2004.

Accordingly, Petitioner's judgment of conviction became final ninety (90) days after the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal with respect to this direct appeal of his conviction, on or about August 20, 1986. As this final conviction date was prior to the enactment of the AEDPA, the applicable starting date for the statute of limitations is the date that the AEDPA became effective, on April 23, 2006.

Petitioner was required to file his federal habeas petition within the one year grace period beginning on that date; therefore, his petition must have been filed on or before April 23, 1997.  See 28 U.S.C. § 2244(d)(1).  Petitioner had no properly filed state court appeals, direct or collateral, pending at any time between April 23, 1996 and April 23, 1997. Petitioner first filed his petition on January 23, 2007; this date is almost ten years after the AEDPA's statute of limitations expired.  Accordingly, Petitioner has missed the deadline to file this petition.

However, habeas petitions are subject to equitable tolling.  If Petitioner can show some reason for his neglect to file on time, the instant petition may not be untimely.  In *McKeithan v. Varner*, the Third Circuit Court of Appeals held:

> "Courts must be sparing in their use of equitable tolling," *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir.1999), applying equitable tolling "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir.1998).  Equitable tolling is appropriate only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights.

108 Fed. App'x 55, 57 (3d Cir. 2004) (quoting *Miller v. New Jersey State Dep't. of Corr.*, 145 F.3d 616, 618-19 (3d Cir.1998)).  See also *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999). Equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir.1998) (quoting *Kocian v. Getty Refining & Mktg. Co.*, 707 F.2d 748, 753 (3d Cir.1983)).  The petitioner must show that he or she "exercised reasonable diligence in investigating and bringing the claims; mere excusable neglect is not sufficient." *Miller,* 145 F.3d at 618-19; *Jones,* 195

F.3d at 159.

While mental incompetence is not *per se* a reason to toll the statute of limitations, if a person's mental deficiency actually affects his ability to timely file a habeas petition, it may constitute extraordinary circumstances sufficient to toll the statute of limitations. *Nara v. Frank*, 264 F.3d 310, 317 (3d Cir. 2001). However, "the general federal rule is that a statute of limitations is tolled by reason of mental illness 'if the illness in fact prevents the sufferer from managing his affairs and from understanding his legal rights and acting upon them.' " *Graham v. Kyler*, No. Civ. A. 01-1997, 2002 WL 32149019, at *3 (E.D. Pa. Oct. 31, 2002) (quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir.1996)). In *Graham*, the Court found that the focus of this determination is "not a lack of information, which has been held insufficient to warrant equitable tolling, *see Cortez v. Saffle*, 2001 WL 276967, at *1 (10th Cir. Mar. 21, 2001), but, rather, the irremediable inability to access information and make use of it." *Id.* Equitable tolling may be available if it is demonstrated that the petitioner is unable to pursue his legal rights, "provided there is a nexus between the petitioner's mental incompetence and [his] inability to file a timely petition." *United States v. Harris*, 268 F. Supp. 2d 500, 506 (E.D. Pa. 2003). "[A] mental condition that burdens but does not prevent a prisoner from filing a timely petition does not constitute 'extraordinary circumstances' justifying equitable tolling." *Id.* (holding that although the petitioner had presented an expert opinion that her mental condition during the relevant time period burdened her efforts to file her habeas petition, there was no evidence that she was mentally incompetent in the sense that her circumstances prevented her from filing a timely petition, and she therefore had not made the threshold showing for equitable tolling).

In the instant matter, Petitioner claims that he suffered from several mental breakdowns caused by severe mental depression, which prevented him from filing his

8

habeas corpus petition for almost ten years.  (Doc. 1 at 8 ¶ 7(d).) In his habeas petition, Petitioner notes that he suffered from several mental breakdowns caused by severe mental depression in the years 1992, 1995, and 2004.  (Doc. 1 at 8 ¶ 7(d).)  As stated by Magistrate Judge Blewitt, the mental breakdowns alleged by the Petitioner in 1992 and 1995 are irrelevant, as the statute of limitations on Petitioner's habeas petition did not begin to run until April 23, 2006.  Petitioner now claims in his Objections to Judge Blewitt's Report and Recommendation that the court "misunderstood" the extent of his depression, and that he was actually "mentally incapacitated" from the years 1992 through 2004 as a result of "severe mental depression".  (Doc. 11 at 7.)   The Petitioner further argues that during the years 1992 through 2004, he lacked the ability to file a habeas petition on his behalf.

In his habeas petition, the Petitioner specifically alleges he suffered from three mental breakdowns due to severe depression.  In his Objections, Petitioner states that he suffered from severe depression for a span of approximately twelve years.   In *United States v. Harris*, the Eastern District of Pennsylvania noted that "our Court of Appeals has never held that 'mental health problems,' an undefined an expansive category, constitutes a basis for equitable tolling. . . . a mental condition that burdens but does not prevent a prisoner from filing a timely petition does not constitute 'extraordinary circumstances' justifying equitable tolling."  268 F. Supp. 2d 500, 506 (E.D. Pa. 2003).

Numerous courts in our circuit have held that depression is a normal part of prison life, and therefore does not warrant equitable tolling.  *See Graham,* 2002 WL 32149019, at *3; *Boyd v. Gillis*, 2004 WL 2397296, at *3 (E.D. Pa. Oct. 25, 2004) ("Depression has been found to be a common fact of prison life and is, without more, insufficient to justify equitable tolling."); *Wilson v. Stickman*, Nos. Civ. A. 03-699, 03-953, 2005 WL 1712385, at *2 (E.D. Pa. July 21, 2005) (holding that depression is an insufficient basis for tolling).

Other circuits have similarly held that depression alone is not enough to equitably toll the statute of limitations. *See also Martin v. Ayers*, 41 Fed. App'x 972, 973 (9th Cir. 2002) ("[D]epression - even severe depression - is a normal incident of prison life. It is not an extraordinary circumstance that warrants equitable tolling."); *Nowak v. Yukins*, 46 Fed. App'x 257 (6th Cir. 2002) (unpublished) (holding that although the petitioner suffered significant depression, she was not so incompetent as to warrant equitable tolling).

However, these cases were premised on the totality of the circumstances, where the courts considered the relevant factors in determining whether the mental health issue had an effect on the ability to file. This Court has not considered the Petitioner's mental health history, and thus has not yet considered the totality of the circumstances of the Petitioner's mental health during the relevant time period. Although the above cases have held that depression is a common facet of prison life, the courts in those cases considered the specific facts surrounding the petitioners' mental health, and found that the petitioners' depression did not affect their ability to file. There is a significant difference between suffering from three mental breakdowns and having a severe mental illness for a span of approximately twelve years. If the Petitioner's ability to file was affected by his depression, then he may be entitled to equitable tolling.

If the Court were to equitably toll based upon the Petitioner's mental health, the statute of limitations would restart when Petitioner gained the mental competency to take up his case once again in 2004. On September 16, 2004 Petitioner filed another state court appeal, a collateral appeal via a PCRA Petition, which was denied by the Pennsylvania Supreme Court May 1, 2006. Thus, Petitioner had until May 1, 2007 to file his habeas petition in this Court. The two petitions of cases 07-412 and 07-706 were

filed on March 5, 2007 and April 11, 2007 respectively, thus both petitions were received before the May, 1, 2007 deadline.  Accordingly, if Petitioner can demonstrate that his mental illness prevented him from managing his affairs and understanding and acting upon his legal rights, then this petition has been timely filed.  The Court will recommit the case to Magistrate Judge Blewitt for further proceedings regarding the Petitioner's mental health history.

## CONCLUSION

After careful consideration, the Court will recommit the case to Magistrate Judge Blewitt for further proceedings on the Petitioner's mental health history.  The Petitioner will forward his mental health history to Magistrate Judge Blewitt for his review.  Petitioner's Motion for Appointment of Counsel filed in Case No. 07-706 (Doc. 2) will also be suspended until that time as well.

An appropriate Order follows.


November 21, 2007                                           /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                            United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GREGORY STEPHENS,

Petitioner,

v.

WARDEN JAMES T. WYNDER, et. al.

Respondents.

CIVIL ACTION: 3:07-CV-0412

And

3:07- CV-0706

(JUDGE CAPUTO)

## ORDER

**NOW**, this 21st day of November, 2007, upon review of Magistrate Judge Blewitt's Report and Recommendation (Doc. 8), **IT IS HEREBY ORDERED** that:

(1) The Petitioner is to **FORWARD** his mental health history to Magistrate Judge Blewitt.

(2) The case is **RECOMMITTED** to Magistrate Judge Blewitt for further proceedings on the mental health history of the Petitioner.

(3) The Clerk of the Court shall **CONSOLIDATE** case numbers 07-0412 and 07-0706, and **CLOSE** the file in case number 07-0706.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge